## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

MARC HARDESTY,

               Plaintiff,

    vs.

GLEN BARCUS, in his individual
and official capacities, COL.
MICHAEL TOOLEY, in his individual
and official capacities, MONTANA
HIGHWAY PATROL, and JOHN
DOES 1-25, in their individual and
official capacities,

               Defendants.

CV 11-103-M-DWM-JCL

FINDINGS AND
RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

_____

    Plaintiff Marc Hardesty ("Hardesty") commenced this § 1983 action against

Defendants Glen Barcus ("Barcus"), Colonel Michael Tooley ("Tooley"), and the

Montana Highway Patrol ("MHP") following his arrest during a traffic stop. Each

of the Defendants has moved separately to dismiss Hardesty's Amended

Complaint for failure to state a claim upon which relief may be granted pursuant to

Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, MHP's motion to

dismiss should be granted, and Barcus's motion should be denied, and Tooley's

motion should be granted in part and denied in part.

## I.    Background[1]

The events giving rise to this litigation took place on April 22, 2009, when Hardesty was stopped for a traffic violation by Montana Highway Patrol Trooper Glenn Barcus while driving eastbound on U.S. Highway 2 near Kalispell, Montana.  Barcus initiated the traffic stop because Hardesty turned directly into the center eastbound lane as he was entering the highway, and because the vehicle he was driving appeared to be missing its right front turn signal assembly.  After pulling Hardesty over into a nearby parking lot, Barcus approached the vehicle and saw that Hardesty appeared nervous.  Barcus also noticed that Hardesty's verbal responses were delayed and found his speech difficult to understand.  At that point, Barcus ordered Hardesty out of the vehicle.

Hardesty claims he then began to fear that Barcus would arrest him because his driver's license was suspended, so he panicked and ran away across the parking lot.  According to Hardesty, Barcus pursued him and hit him on the back of his head with a Maglite flashlight.  Hardesty explains that he then ran across the highway and into another parking lot, at which time Barcus approached him from

_____

[1] The following facts are taken from Hardesty's Amended Complaint.  Dkt. 23.

behind and again hit him on the head with the flashlight. Hardesty states that he was then able to slip out of his shirt and was "trying to escape" when Barcus sprayed him with pepper spray and tackled him. Hardesty claims that Barcus struck him on the head with the Maglite flashlight at least two more times, and punched him in the right eye. Hardesty describes "squeez[ing] away from" Barcus once again, running across the parking lot, and crawling under a mobile home. Hardesty recalls that Barcus followed him under the mobile home, knelt on his back, held his left arm behind him, and punched him again. Kalispell Police Officer Chad Zimmerman then arrived on the scene and assisted in handcuffing Hardesty, who was taken by ambulance to the Kalispell Regional Medical Center. Hardesty eventually pled no contest in state court to one felony count of criminal possession of dangerous drugs, and misdemeanor charges of assault and resisting arrest arising out of the incident.

Hardesty commenced this action in July 2011, naming Barcus, the Montana Highway Patrol, and Montana Highway Patrol administrator Colonel Michael Tooley as defendants. Dkt. 1. Hardesty's Amended Complaint alleges a claim under 42 U.S.C. § 1983 against Barcus for violations of his Fourth and Fourteenth Amendment rights to be free from the excessive use of force, and against Tooley for failing to properly hire, supervise, train, discipline and control Barcus.

Hardesty has also asserted a state law claim for assault and battery against Barcus, and state law claims against all Defendants for negligence, negligent and intentional infliction of emotional distress, malicious acts or omissions, and violations of the Montana Constitution.

Each of the Defendants has moved to dismiss Hardesty's Amended Complaint for failure to state a claim upon which relief may be granted. MHP moves to dismiss on the ground that it is immune from suit under the Eleventh Amendment to the United States Constitution. Barcus moves to dismiss on the ground that Hardesty's § 1983 claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and argues he is entitled to statutory immunity from Hardesty's state law claims. Tooley also moves to dismiss Hardesty's § 1983 claim based on *Heck,* or, alternatively, because it is not pled with adequate specificity. Finally, Tooley argues that Hardesty's official capacity state law claims must be dismissed on Eleventh Amendment grounds, and maintains he is entitled to statutory immunity as to Hardesty's individual capacity state law claims.

## II. Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing

that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949. The purpose of this pleading requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. Factual allegations that are simply consistent with a defendant's liability stop "short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S.Ct. at 1949 (*quoting Twombly*, 550 U.S. at 557.)

In other words, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. The allegations in a complaint must rise above the level of mere speculation, but need only "raise a reasonable expectation that discovery will reveal evidence of" a basis for liability. *Twombly*, 550 U.S. at 555-

56.

In determining whether this standard is satisfied, the court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir. 2008). Assessing a claim's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

Typically, "a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). A court may, however, "'take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment,' as long as the facts noticed are not 'subject to reasonable dispute.'" *Intri-Plex Technologies*, 499 F.3d at 10532 (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 677 (9th Cir. 2001).

Citing this exception to the general rule, Barcus asks the Court to take

judicial notice of the state court criminal proceedings against Hardesty and has submitted certified copies of several state court documents for the Court's consideration. Likewise, Tooley asks the Court to take judicial notice of various pleadings in an unrelated civil case in state court. Hardesty does not dispute that this Court may take judicial notice of those materials without converting the Defendants' motions to dismiss into one for summary judgment.

## III.   Discussion

### A.   MHP's Motion to Dismiss

MHP moves to dismiss Hardesty's claims on the ground that it is immune from suit in federal court under the Eleventh Amendment to the United States Constitution.[2]  The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subject of any Foreign State." U.S. Const. amend. XI.  It

---

[2] MHP does not specify whether it is requesting dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  There is some confusion in the Ninth Circuit as to which of these two rules provides the proper vehicle for seeking dismissal based on Eleventh Amendment immunity.  *See e.g. Monet v. State of Hawaii*, 2011 WL 2446310 *3 (D. Hawaii June 14, 2011).  But because the legal standards under both rules are essentially the same, the Court would reach the same conclusion under either rule.

is well-established that the immunity provided for by the Eleventh Amendment

extends to suits brought against a state by its own citizens,[3] and applies not only to

states, but also to state agencies like MHP.[4]

While the immunity conferred by the Eleventh Amendment is subject to

certain exceptions, Hardesty does not invoke any of those exceptions here.  In fact,

Hardesty has effectively conceded that MHP is entitled to Eleventh Amendment

immunity.  For one thing, Hardesty has not filed a brief in response to MHP's

motion.  *See* Local Rule 7.1(d)(1)(B) (explaining that "failure to file a response

brief may be deemed an admission that the motion is well-taken").  And in

response to Tooley's separate motion, Hardesty recognizes that "the state of

Montana has expressly removed itself as a defendant in this case, because it has

invoked its Eleventh Amendment right not to be sued in federal court."  Dkt. 36, at

13.  Particularly in light of this statement, the Court views Hardesty's failure to

respond to MHP's motion as an admission that the motion is well-taken.

Accordingly, and because MHP is in any event entitled to Eleventh Amendment

immunity, its motion to dismiss should be granted.

---

[3] *See e.g., Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

[4] *See e.g.*, *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995); *Durning v. Citibank*, 950 F.2d 1419, 1422-23 (9th Cir. 1991).

**B.      Barcus's Motion to Dismiss**

    1.    Section 1983

Barcus argues that Hardesty's § 1983 excessive force claims are barred by

*Heck v. Humphrey*, 512 U.S. 477, 487 (1994), in which the United States Supreme

Court held that a plaintiff who has been convicted of a crime under state law may

not seek damages under 42 U.S.C. § 1983 if a judgment in his favor "would

necessarily imply the invalidity of his conviction or sentence."  In determining

whether *Heck* applies, "an important touchstone is whether a § 1983 plaintiff

could prevail only by negating 'an element of the offense of which he has been

convicted.'" *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002)

(quoting *Heck*, 512 U.S. at 487 n.6).  A § 1983 action must be dismissed "'if a

criminal conviction arising out of the same facts stands and is fundamentally

inconsistent with the unlawful behavior for which section 1983 damages are

sought.'" *Cunningham*, 312 F.3d at 1153 (quoting *Smithart v. Towery*, 79 F.3d

951, 952 (9th Cir. 1996)).

It is undisputed that Hardesty stands convicted of three criminal offenses

arising out of his encounter with Barcus.  Several months after the incident,

Hardesty pled no contest to one count of resisting arrest in violation of Mont.

Code Ann. § 45-7-301(1)(a), and one count of assault in violation of Mont. Code

Ann. § 45-5-201(1)(a).  Dkt. 13-9.  Hardesty also pled no contest to one felony

count of criminal possession of dangerous drugs in violation of Mont. Code Ann.

§ 45-9-102(1).  As Hardesty appropriately concedes, those no contest pleas

constitute convictions under Montana law.  Mont. Code Ann. § 45-2-101(16).

Focusing exclusively on the assault conviction, Barcus argues that

Hardesty's excessive force claim is not cognizable under § 1983 because a

judgment in his favor would negate the elements of that conviction and necessarily

imply its invalidity.[5]  Barcus begins by pointing to the prosecuting attorney's

charging affidavit, upon which the state court expressly relied in finding there was

a sufficient factual basis for accepting Hardesty's plea.  Dkt. 30-8, at 10.  Barcus

maintains that the factual basis for Hardesty's assault conviction as set forth in that

affidavit is incompatible with the facts alleged in Hardesty's excessive force

claim, such that success on the excessive force claim would invalidate the

underlying assault conviction.

The charging affidavit thoroughly sets forth the factual basis for Hardesty's

plea, describing Hardesty's behavior during the traffic stop as "noncompliant."

Dkt. 30-2, at 5.   The affidavit states, for example, that upon exiting his vehicle

---

[5] Barcus not argue that success on Hardesty's § 1983 claims would in any
way invalidate his convictions for resisting arrest or criminal possession.  Because
Barcus does not raise those issues, the Court will confine its analysis accordingly.

Hardesty ignored Barcus's instructions to walk toward the patrol car and instead "turned and ran into a neighboring parking lot." Dkt. 30-2, at 4. The affidavit then describes the assault as follows:

> Hardesty ran across US Highway 2 and eventually became entangled in some wire. Trooper Barcus was able to catch up and sprayed Hardesty with OC Spray in an attempt to detain him. Hardesty was still noncompliant and then swung at Trooper Barcus with his right hand in a hook swing motion. Trooper Barcus experienced pain on the left side of his head and later discovered soreness, swelling, and a small abrasion where he was hit.

> Dkt. 30-2, at 5.

Barcus was later treated and released from the Kalispell Regional Medical Center "with numerous abrasions, as well as back and neck strains." Dkt. 30-2, at 5. Based on those facts, Hardesty stands convicted of having "purposely or knowingly caused bodily injury to" Barcus in violation of Mont. Code Ann. § 45-5-201(1)(a).

Barcus maintains that Hardesty's current lawsuit runs afoul of *Heck* because the version of events alleged in the Amended Complaint contradicts the version set forth in the criminal affidavit and would, if proven, necessarily invalidate Hardesty's assault conviction. In particular, Barcus focuses on the fact that Hardesty is essentially "claiming that Trooper Barcus hit him before his assault on Trooper Barcus." Dkt. 30, at 6. Although the Amended Complaint does not even

mention the assault, Barcus argues it is possible to determine when Hardesty

assaulted him by reading the Amended Complaint in conjunction with the criminal

affidavit.  The affidavit indeed reflects that Hardesty struck Barcus after being

sprayed with OC Spray.[6]  And according to the Amended Complaint, by the time

Barcus used the OC Spray, he had already hit Hardesty twice with the maglite.

Barcus argues that if the trier of fact in this case "were to find that Hardesty hit

Trooper Barcus only after Trooper Barcus hit him twice in a manner that he has

characterized as an excessive use of force, such a finding would necessarily

invalidate Hardesty's assault conviction."  Dkt. 30, at 7.  In other words, as Barcus

reads it, the Amended Complaint effectively alleges that any force Hardesty used

was justified because Barcus precipitated the assault by using excessive force.  If

the trier of fact were to agree, Barcus argues that such a finding would necessarily

invalidate  Hardesty's assault conviction.

     At first glance, this argument has some appeal. If a trier of fact were to find

that Barcus was the initial aggressor and used excessive force, then Hardesty

---

[6] Hardesty disputes this reading of the affidavit, and argues that the timing of his assaultive blow is either unknown or disputed.  Dkt. 35, at 5-8.  Hardesty claims it is not clear from the affidavit whether he actually made contact with Barcus when he swung at him with a right hook immediately after being sprayed with OC Spray.  But that is the only assaultive blow described in the affidavit, and Hardesty stands convicted of assaulting Barcus based on the facts as set forth therein.

might well have been justified in defending himself and there would have been no basis for an assault conviction. But Barcus's theory, which is that such a result would necessarily invalidate Hardesty's assault conviction, overlooks several of Hardesty's factual allegations.

Most importantly, Hardesty alleges that Barcus responded to his assaultive behavior with excessive force. For example, Hardesty alleges that after Barcus sprayed him with OC spray, he struck him "on the head with his Maglite flashlight at least two more times," and punched him in the right eye. Dkt. 23, at ¶ 22. Hardesty claims he "then crawled underneath a mobile home in an attempt to get away from Trooper Barcus," but Barcus followed him under the mobile home, knelt on his back, held his left arm behind him, and punched him again. Dkt 23, at ¶ 25-26. Accepting all of these factual allegations at true and construing them in Hardesty's favor, Hardesty has plausibly alleged that Barcus responded to his assault with excessive force in violation of § 1983.

The Ninth Circuit recently recognized that *Heck* does not necessarily bar a plaintiff who has been convicted of an offense like resisting arrest or assault from pursuing a § 1983 claim in such situations. *Hooper v. County of the San Diego*, 629 F.3d 1127 (9th Cir. 2011). The plaintiff in *Hooper* pled guilty to resisting a peace officer under California law after struggling against the officer who arrested

her for possession of methamphetamine. *Hooper*, 629 F.3d at 1129. The entire arrest in *Hooper* "was effectuated in a single continuous chain of events lasting a very brief time." *Hooper*, 629 F.3d at 1131. During that approximately 45 second period, the arresting officer struggled with the resisting plaintiff, who ended up on the ground. *Hooper*, 629 F.3d at 1129. Once the plaintiff had stopped resisting, the officer called for his German Shepherd dog, who bit the plaintiff on the head and tore off large portions of her scalp. *Hooper*, 629 F.3d at 1129.

At issue on appeal was "the basic *Heck* question – whether success in [the plaintiff's] § 1983 claim that excessive force was used during her arrest 'would necessarily imply or demonstrate the invalidity' of her conviction" under state law. *Hooper*, 629 F.3d at 1132-33 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005)). The court concluded that it would not, reasoning that "[a] defendant might resist a lawful arrest, to which the arresting officers might respond with excessive force to subdue him" and "[t]he subsequent use of excessive force would not negate the lawfulness of the initial arrest attempt, or negate the unlawfulness of the criminal defendant's attempt to resist it." *Hooper*, 629 F.3d at 132. The court explained that even "[t]hough occurring in one continuous chain of events, two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, the second

giving rise to civil liability on the part of the arresting officer." *Hooper*, 629 F.3d at 1132.

The Ninth Circuit thus held that a conviction for resisting arrest "does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one continuous transaction." *Hooper*, 629 F.3d at 1134. Applying that principle to the facts before it, the *Hooper* court determined that the plaintiff's § 1983 excessive force claim was not *Heck*-barred based on her conviction for resisting a peace officer under California law.[7] *Hooper*, 629 F.3d at 1134.

Here, as in *Hooper*, Hardesty has alleged a factual scenario that would potentially allow for his § 1983 excessive force claims to coexist with his criminal conviction. As was the case in *Hooper*, Hardesty's arrest was effected in one continuous, albeit somewhat lengthier, chain of events involving two factual contexts. Accepting all of the factual allegations in the Amended Complaint as true and construing them in Hardesty's favor, Hardesty has plausibly alleged that

---

[7] Barcus suggests the Court should limit the rationale of *Hooper* to situations involving a conviction for resisting arrest as opposed to assault. And he implores the Court to follow the rationale of *Cummings v. City of Akron*, 418 F.3d 676 (6th Cir. 2005) (holding that excessive force claims are *Heck* barred by a conviction for misdemeanor assault on an officer during the arrest incident). *Hooper*, however, does not draw this distinction. In fact, *Hooper* cites the holding in *Cummings* as standing in contradiction to the holding in *Hooper*.

Barcus responded to his assault with excessive force in violation of § 1983. Because Hardesty could thus prevail on his § 1983 claim that Barcus used excessive force against him during the arrest without negating any of the elements of his assault conviction or necessarily implying its invalidity, *Heck* does not apply and Barcus's motion to dismiss Hardesty's § 1983 claim is properly denied.

## 2. State law claims

Barcus argues he is entitled to statutory immunity from Hardesty's individual capacity state law claims based on Mont. Code Ann. § 2-9-305(5), which provides as follows:

> Recovery against a governmental entity under the provisions of parts 1 through 3 of this chapter constitutes a complete bar to any action or recovery of damages by the claimant, by reason of the same subject matter, against the employee whose negligence or wrongful act, error, omission, or other actionable conduct gave rise to the claim. In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless the claim constitutes an exclusion provided in subsections (6)(b) through (6)(d).

Subject to certain exceptions not applicable here, subsection (5) "grants absolute immunity to state employees acting within the scope of their employment." *Gerber v. Commissioner of Ins. of State*, 786 P.2d 1199, 1200 (Mont. 1990). *See also Polesky v. Morrison*, 2009 WL 117365 *2 (D Mont. 2009)

(recognizing that "[s]tate employees acting within the course and scope of their employment are protected from individual liability for that conduct by the Montana Tort Claims Act.").

The State of Montana has acknowledged that Barcus was acting in the course and scope of his employment as a trooper with the Montana Highway Patrol during his encounter with Hardesty. Dkt. 30, at 10-11. All of Hardesty's state law claims against Barcus stem from that encounter. Citing the State's acknowledgment, Barcus argues that he is statutorily immune from individual liability for Hardesty's state law claims.

Hardy disagrees with Barcus's reading of Mont. Code Ann. § 2-9-305(5), and takes the position that the State must do more than simply acknowledge that an employee was acting within the course and scope of employment in order for the statute to confer immunity. As Hardesty reads it, "the statute also assumes and requires that the State of Montana substitute itself as the defendant against whom the plaintiff may recover damages." Dkt. 36, at 13. Hardesty claims the State has effectively done the opposite here, invoking its Eleventh Amendment immunity and thereby removing itself as a defendant. Because this means that he no longer has the opportunity to recover damages against the State of Montana, Hardesty argues that Mont. Code Ann. § 2-9-305(5) and the immunity it confers do not

apply.

While neither party gets it quite right, Hardesty's argument is closer to the mark. MHP has made two tactical moves in its motion to dismiss – it has invoked its Eleventh Amendment immunity, and it has acknowledged that Barcus and Tooley were acting in the course and scope of their employment as contemplated by Mont. Code Ann. § 2-9-305(5). As discussed above, the parties agree that MHP is entitled to Eleventh Amendment immunity from Hardesty's claims and should be dismissed from this lawsuit on that basis. MHP's dismissal will then leave Barcus and Tooley as the sole remaining defendants. Citing MHP's second tactical move – its acknowledgment that he was acting in the course and scope of his employment – Barcus in turn argues he is entitled to immunity from Hardesty's individual capacity state law claims under Mont. Code Ann. § 2-9-305(5).

But because MHP's invocation of its Eleventh Amendment immunity requires its dismissal as a defendant, this action cannot be viewed as one against a "governmental entity" within the meaning of Mont. Code Ann. § 2-9-305(5). Nor has there been any "[r]ecovery against a governmental entity" as contemplated by subsection (5). Rather, because Barcus and Tooley will be the only remaining defendants, the action must necessarily be viewed as one in which "governmental entity employee[s]" are the only "party defendant[s]" – just as if the state agency

had not been named as a defendant in the first instance.  Thus, the indemnification

provisions of subsection (4) control:

> In any noncriminal action in which a governmental entity employee is a
> party defendant, the employee must be indemnified by the employer for any
> money judgments or legal expenses, including attorney fees either incurred
> by the employee or awarded to the claimant, or both, to which the employee
> may be subject as a result of the suit unless the employee's conduct falls
> within the exclusions provided in subsection (6).

Mont. Code Ann. § 2-9-305(4).

Pursuant to Mont. Code Ann. § 2-9-305(4), the State of Montana may be

statutorily required to indemnify Barcus and Tooley for any money judgment

awarded or legal expenses incurred in this lawsuit.  Such a result does not run

afoul of the Eleventh Amendment.  *See e.g. Cornforth v. Univerity of Oklahoma

Board of Regents*, 263 F.3d 1129, 1133 (10th Cir. 2001) (explaining that even

though "state monies may ultimately be used to satisfy a judgment obtained

against a state official sued in his individual capacity, a state cannot extend its

sovereign immunity to its employees by voluntarily assuming an obligation to

indemnify them); *Griess v. State of Colorado,* 841 F.2d 1042, 1045-46 (10th Cir.

1988) (recognizing that "[s]everal other circuits have already soundly rejected []

attempts to create a derivative constitutional immunity predicated" on a state

indemnification obligation).

Because Hardesty's lawsuit must be viewed as one against two "governmental entity employee[s]" rather than as one against a "governmental entity," and because there has been no "[r]ecovery against a governmental entity," the immunity provision set forth in Mont Code Ann. § 2-9-305(5) does not apply. While Barcus may ultimately be entitled to indemnification under subsection (4) for any money judgment or legal expenses awarded or incurred, he is not immune from individual liability for Hardesty's state law claims unless and until there is a recovery against the State of Montana. Consequently, his motion to dismiss those claims should be denied.

### C.    Tooley's Motion to Dismiss

#### 1.    Section 1983 claim

Hardesty's Amended Complaint alleges a claim under 42 U.S.C. § 1983 against Tooley in his individual capacity for failing to properly hire, supervise, train, discipline, and control the law enforcement officers under his command, including Barcus. Dkt. 23, at ¶¶ 48-56. Tooley moves to dismiss Hardesty's § 1983 claim on two alternative grounds. First, Tooley argues that because Hardesty's § 1983 claim derives entirely from Barcus's actions, "the dismissal of the § 1983 claim against Trooper Barcus should also result in dismissal of the § 1983 claim against Colonel Tooley." Dkt. 34, at 2. As discussed above, however,

Hardesty has adequately stated a § 1983 claim against Barcus. Because

Hardesty's § 1983 claim against Barcus is still viable, Tooley is not entitled to

have the § 1983 claim Hardesty has asserted against him dismissed due to its

allegedly derivative nature.

Tooley argues in the alternative that Hardesty's § 1983 claim should be

dismissed because it does not satisfy the pleading standards set forth in *Ashcroft v.*

*Iqbal*, 129 S.Ct. 1937 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

(2007). In particular, Tooley contends that Hardesty's § 1983 claim is deficient

because it does not allege facts showing that Tooley directly participated in or

directed Barcus's alleged use of excessive force, or that he knew about that use of

force and failed to act to prevent it.

Hardesty makes clear in response that he is not seeking to impose liability

on Tooley for personally participating in Barcus's alleged use of excessive force.

Rather, Hardesty's theory is that Tooley should be held liable for his personal

conduct as Barcus's supervisor.

Supervisory officials like Tooley may not be held liable under Section 1983

"for actions of subordinates on any theory of vicarious liability." *Hansen v. Black*,

885 F.2d 642, 645-46 (9th Cir. 1989). Instead, "[a] defendant may be held liable as

a supervisor under § 1983 'if there exists either (1) his or her personal

involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (*quoting Hansen*, 885 F.2d at 646). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is the 'moving force of the constitutional violation'" *Hansen,* 885 F.2d at 646 (*quoting Thompkins v. Belt,* 828 F.2d 298, 304 (5th Cir. 1987). "The requisite causal connection can be established...by setting in motion a series of acts by others, ... or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr*, 652 F.3d at 1207-08 (internal quotation marks and citations omitted).

While the factual allegations in support of Hardesty's Section 1983 supervisory liability claim are relatively sparse, they are adequate to satisfy *Twombly* and *Iqbal.* Hardesty alleges, for example, that Barcus violated MHP policies on the use of force by hitting him with the Maglite flashlight, and that Tooley set those events in motion by failing to properly train, supervise, or control Barcus "such that the laws, rules and regulations regarding the use of force and

deadly force were violated by Trooper Barcus." Dkt. 23, ¶¶ 23-24, 50. Hardesty also alleges that Tooley "failed to properly investigate and punish prior constitutional deprivations, which encouraged a culture in the[] department[] of excessive use of force." Dkt. 23, ¶ 52. These allegations are sufficient to state a claim that is "plausible on its face,"[8] and to "raise a reasonable expectation that discovery will reveal evidence of" a basis for Tooley's liability. *Twombly*, 550 U.S. at 555-56. Hardesty's supervisory liability claim is thus sufficient to withstand Tooley's Rule 12(b)(6) motion to dismiss.

### 2. State law claims

Tooley moves to dismiss Hardesty's official capacity state law claims on the ground that the proper defendant when alleging a tort claim against a state entity is the State of Montana. As discussed above, the State of Montana is immune from suit under the Eleventh Amendment. Tooley argues that Hardesty cannot circumvent that immunity by naming him as a defendant in his official capacity. Hardesty concedes as much and agrees that his official capacity claims against Tooley are properly dismissed. Dkt. 21, at 2.

To the extent Hardesty has pled state law claims against Tooley in his individual capacity, Tooley follows Barcus's lead and argues those claims should

---

[8] *Iqbal*, 129 S.Ct. at 1949.

be dismissed based on the statutory immunity provided to state employees acting in the course and scope of their employment. Mont. Code Ann. § 2-9-305(5). As discussed above, however, Hardesty's individual capacity state law claims are governed by the indemnity provisions of subsection (4), rather than the immunity provisions of subsection (5). Tooley's motion to dismiss those claims fails for all of the same reasons that Barcus's motion fails.

## IV. Conclusion

For all of the reasons set forth above,

IT IS RECOMMENDED that:

(1)   MHP's motion to dismiss based on Eleventh Amendment immunity be GRANTED;

(2) Barcus's motion to dismiss be DENIED, and

(3) Tooley's motion to dismiss be GRANTED to the extent that Hardesty's official capacity state law claims are properly dismissed, but DENIED in all other respects.

DATED this 20th day of January, 2012

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge