## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

MARC HARDESTY,

                                                          CV 11-103-M-DWM-JCL

                   Plaintiff,

       vs.

                                                   ORDER

GLEN BARCUS, in his individual
and official capacities, COL.
MICHAEL TOOLEY, in his individual
and official capacities, MONTANA
HIGHWAY PATROL, and JOHN
DOES 1-25, in their individual and
official capacities,

                   Defendants.

_____

Before the Court are the parties' motions in limine. For the reasons stated,

the motions are granted in part, and denied in part.

## I.    BACKGROUND

On April 22, 2009, Montana Highway Patrol Trooper Glenn Barcus initiated

a traffic stop of Plaintiff Marc Hardesty on U.S. Highway 2 near Kalispell,

Montana. During the course of the encounter, Barcus directed Hardesty to exit the

vehicle. While Hardesty initially complied, he fled from the scene with Barcus in

pursuit. During the pursuit, several physical encounters occurred between the two,

in which Barcus struck Hardesty several times with a flashlight, dispersed Oleoresin Capsicum ("OC") spray, and punched him in the right eye. Barcus, however, was also contaminated by the OC spray he deployed.

Hardesty commenced this action seeking compensation for the injuries he allegedly sustained in the encounter with Barcus. Also named as a defendant is Colonel Michael Tooley, the Chief Administrator of the Montana Highway Patrol ("Highway Patrol").

Hardesty advances claims under 42 U.S.C. § 1983 against Barcus for his alleged use of excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Hardesty also seeks to impose section 1983 liability upon Tooley in relation to his hiring, supervising, training, disciplining, and controlling Barcus.

Additionally, Hardesty advances claims under Montana law against Barcus for assault and battery, and against both Barcus and Tooley for negligence, negligent and intentional infliction of emotional distress, malicious acts or omissions, and violations of the Montana Constitution.

On November 15, 2012, the Court issued its recommendation that all of Hardesty's claims against Tooley be dismissed. Therefore, as noted below, certain aspects of the parties' motions in limine relative to Tooley's alleged liability are

moot and, therefore, denied.

## II.  DISCUSSION

A motion in limine is used to secure the exclusion of inadmissible evidence

before it is actually offered at trial.  *Luce v. United States*, 469 U.S. 38, 40 n. 2

(1984).  To be excluded, the evidence must be inadmissible on all potential

grounds.  *BNSF Railway Company v. Quad City Testing Laboratory, Inc.*, 2010

WL 4337827, *1 (D. Mont. 2010).  "'Unless evidence meets this high standard,

evidentiary rulings should be deferred until trial so that questions of foundation,

relevancy and potential prejudice may be resolved in proper context.'"  *Id*.

(quoting *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F. Supp. 1398,

1400 (N.D. Ill. 1993)).  A court has discretion in ruling upon a motion in limine.

*Tritchler v. County of Lake*, 358 F.3d 1150, 1155 (9th Cir. 2004).

### A.  Tooley and Barcus's Motion in Limine

#### 1.  Will Cordes

##### a.  Opinions That Are No Longer Relevant

Defendants move to exclude certain opinions of Hardesty's expert witness,

Will Cordes.  Several of those opinions, however, are relevant only to the issue of

Tooley's purported liability.  They are Mr. Cordes's opinions regarding:

1.      the Highway Patrol and Tooley's conduct in hiring Barcus, and their use of Risk Assessment Profiles prepared regarding Barcus for use in considering Barcus's job application;

2.      deficiencies in the training that the Highway Patrol and Tooley provided to troopers relative to the use of force against citizens; and

3.      the heroism award, or "Medal of Valor" given to Barcus.

Since the Court recommends that Tooley be dismissed, these opinions are no longer relevant to any fact or issue yet to be resolved at trial. Therefore, Defendants' motion is denied as moot with respect to these three opinions.

### b.      OC Spray

Defendants move to exclude a specific opinion Mr. Cordes has expressed regarding Barcus's use of OC spray in this case. Although Mr. Cordes indicates Barcus's use of the OC spray may have been justified, he opines that Barcus's "own contamination contributed to his heightened state of anxiety, and he should have disengaged and made more of an effort to call for backup." Dkt. 76-1 at 18 of 22. Defendants argue Mr. Cordes is not sufficiently qualified as an expert on the use of OC spray as required by Fed. R. Evid. 702 to render an opinion regarding those matters.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert opinion testimony and provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under authority of Rule 702 the district courts must serve as a "gatekeeper" to ensure that expert opinion testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The proponent of expert witness opinion testimony bears the burden of establishing its admissibility, and "must show by a preponderance of the evidence that it is reliable and helpful to the trier of fact." *Todd v. Baker*, 2012 WL 1999629, *1 (D. Mont. 2012); *Groves v. Croft*, 2011 WL 5509028, *5 (D. Mont. 2011). The district court has discretion in ruling on the admissibility of expert testimony. *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010).

One of the preliminary gate-keeping determinations a trial court must make

relative to the admission of an expert's testimony is whether the witness is appropriately qualified as an expert on the particular subject matter. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000); Fed. R. Evid. 104(a). Rule 702 provides that an expert may be qualified based on his or her "knowledge, skill, experience, training, or education[.]" But an expert must possess the requisite qualifications within the specific area of expertise on which the expert is expected to express an opinion. *See Reiner v. Warren Resort Hotels, Inc.*, 2008 WL 5120682, *13 (D. Mont. 2008). Although an expert may be qualified in one area of expertise, the expert "may be precluded from offering opinions beyond that area of expertise[.]" *United States v. W.R. Grace*, 455 F. Sup. 2d 1181, 1188 (D. Mont. 2006).

Defendants cite to Mr. Cordes's deposition testimony confirming that his knowledge of, and experience with, OC spray is extremely limited. In the mid 1980s, when Mr. Cordes worked for a sheriff's department in Georgia, that department evaluated whether its officers should carry OC spray. Mr. Cordes received some training on OC spray at that time in connection with the department's evaluation of the spray. But after evaluating the propriety of using OC spray, the sheriff's department decided it would not use it.

Mr. Cordes also confirmed that in his career as a law enforcement officer he

has never been issued OC spray, and he has never used OC spray on any suspect. He stated he has no experience in "the proper use of OC spray in the law enforcement environment," and he has never taught any training courses on the use of OC spray. Dkt. 76-2 at 48-49 of 58.

In response, Hardesty suggests that Mr. Cordes is sufficiently qualified as an expert on the use of OC spray. Hardesty, however, relies only on Mr. Codes's general knowledge about officer safety issues concerning the use of weapons in arrest situations, and his general knowledge regarding the use of force. Significantly, Hardesty has presented no evidence supporting his qualifications as an expert in the specific field of using OC spray.

Based on Mr. Cordes's deposition testimony, the Court finds that, other than his experience in the mid 1980s in evaluating the propriety of using OC spray, he has no knowledge, experience or training in the specific area of expertise regarding the use of OC spray. There is nothing his Mr. Cordes's background that qualifies him as an expert on the effects of OC spray on an officer's mental state of mind due to self-contamination, or the protocol an officer should follow in the course of pursuing a suspect if the officer contaminates himself with OC spray. The preponderance of the evidence establishes that Mr. Cordes does not possess the requisite qualifications in that specific area of expertise. Defendants' motion

is granted in this respect.

### c.    **Report Writing**

Hardesty intends to present Mr. Cordes's opinions relative to deficiencies in Barcus's abilities to properly and thoroughly prepare a detailed investigative police report following his encounter with Hardesty. Mr. Cordes criticizes the substance of Barcus's report in that it failed to articulate the exigencies of the circumstances justifying the force Barcus used against Hardesty. Defendants move to exclude this opinion testimony on the ground it is irrelevant to the factual issues to be resolved at trial. The Court agrees.

Rule 702 requires that an expert's testimony "must help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). This is a threshold issue the court must assess in determining whether the expert's opinion is admissible. *Daubert*, 509 U.S. at 592.

The relevant facts at issue in this case are those that describe Barcus's conduct towards Hardesty on April 22, 2009, which have probative value to Hardesty's theories of liability. Thus, Barcus's alleged inability to properly prepare his police report subsequent to the events on April 22, 2009, is irrelevant to the facts of this case, and an expert opinion on that matter will not assist the jury in determining any fact at issue in this case.

Hardesty, however, argues that Mr. Cordes's opinions as to the deficiencies in Barcus's report are admissible to assist in impeaching Barcus's credibility as to the details of the encounter between Barcus and Hardesty on April 22, 2009. Hardesty asserts the report lacks a description of the requisite details that would justify Barcus's conduct and use of force. Therefore, he suggests Barcus is either not fully credible about the events that transpired, or he does not accurately remember what happened.

Hardesty is obviously free to question Barcus regarding the justifications for his conduct, and he may question Barcus about the alleged absence of sufficient facts articulated in his report that would support his assertion that the level of force he employed was justified under the circumstances. But testimony in the form of an expert opinion is not necessary for the purpose of identifying facts that are missing from Barcus's report that might justify his use of force. Mr. Cordes's opinion testimony cannot be offered by Hardesty, in the first instance, to suggest Barcus's trial testimony is not credible. Whether Barcus opens the door to rebuttal testimony by Cordes will depend on the events which transpire at trial.

### d. Suspect Identification

Defendants move to exclude Mr. Cordes's opinion as to why Barcus may have chased Hardesty when Hardesty fled from the scene. By the time Hardesty

fled, Barcus had not obtained any identifying information about Hardesty. With respect to those facts, Mr. Cordes states as follows: "Although it is pure conjecture on my part, I believe this incident was predicated by Trooper Barcus's failure to initially identify his suspect." Dkt. 76-1 at 15 of 22. Mr. Cordes explains his opinion stating that "[w]hen Mr. Hardesty began to flee, the trooper probably realized his mistake in failing to get a name for the record [...], and Trooper Barcus probably realized at that moment a successful escape would have left him with no identifiable suspects." *Id*. Defendants argue these expert opinions are inadmissible as inappropriate speculation and conjecture.

Hardesty argues Mr. Cordes has expertise in police practices, and can present testimony that Barcus erred in failing to obtain Hardesty's identification. From that expertise, however, Hardesty suggests Cordes can appropriately form an opinion that Barcus may have decided to chase Hardesty because he neglected to get his identification. The Court disagrees.

One of the threshold requirements for the admissibility of expert opinion testimony under Rule 702 is that the "expert's scientific, technical, or other specialized knowledge" must constitute something "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). Thus, where an expert fails to demonstrate that a particular

opinion is more than a mere subjective belief, unsupported speculation, or a bald conclusion, the opinion is subject to exclusion under Rule 702. *Claar v. Burlington Northern Railroad Company*, 29 F.3d 499, 502 (9th Cir. 1994); *Flagstone Development, LLC v. Joyner*, 2011 WL 5040663, *2 (D. Mont. 2011).

Here, Mr. Cordes expressly states that his belief about the reason why Barcus chased Hardesty is "pure conjecture." That Barcus may have decided to chase Hardesty because he neglected to get Hardesty's name is nothing more than unsupported speculation by Mr. Cordes. Defendants' motion is granted in this respect.

### e. Barcus's Discipline for Subsequent Conduct

In August 2010, well after the encounter between Barcus and Hardesty, Barcus was involved in an unrelated incident at Scotty's Bar in Kalispell, Montana, while he was off duty. Barcus was allegedly involved in a physical altercation at the bar, and the Highway Patrol disciplined Barcus for that conduct.

Defendants move to exclude statements Mr. Cordes made about Barcus's conduct at Scotty's Bar. Specifically, Mr. Cordes, purportedly referring to the August 2010 incident, stated as follows:

> Although it occurred after the arrest of Mr. Hardesty, the behavior exhibited by Trooper Barcus, which resulted in his receipt of a "pre-termination" notice or warning, did not surprise me. The irony of his reflecting upon the

loss of a fellow MHP trooper—killed by a drunk driver—by drinking excessively is inexcusable.

Dkt. 76-3 at 4 of 8.  Defendants object to Mr. Cordes's statements that Barcus's behavior at the bar "did not surprise" him, and that Barcus's excessive drinking at the bar is "inexcusable."  Hardesty, however, does not oppose this aspect of Defendants' motion.

The Court agrees that Mr. Cordes's statements characterizing Barcus's conduct in August 2010 are inadmissible at the trial in this matter.  The statements are subjective beliefs that will not "help the trier of fact to understand the evidence or to determine a fact in issue[.]"  Fed. R. Evid. 702(a).  Defendants' motion is granted in this respect.

## 2.  Susan Day, Ph.D.

Defendants move to exclude all of the testimony of Hardesty's expert witness, Susan Day, Ph.D.  They assert Dr. Day is not sufficiently qualified as an expert to render opinions relative to:  (1) the psychological screening that law enforcement agencies conduct of individuals applying for law enforcement jobs prior to extending an offer of employment to the individual; and (2) the propriety of the Highway Patrol and Tooley's decision to hire Barcus in view of the Risk Assessment Profiles that were prepared relative to Barcus's job applications.

As demonstrated in the parties' briefs relative to Dr. Day's testimony, it is evident that Dr. Day's testimony is relevant only to the issue of the Highway Patrol and Tooley's decision to hire Barcus.  Because the Court has recommended that Tooley be dismissed, Dr. Day's testimony is no longer relevant to any other remaining issue.  Therefore, Defendants' motion to exclude Dr. Day's testimony is moot and, on that basis, denied.

### 3. Other Incidents of Barcus's Conduct

Defendants move to exclude, as impermissible character evidence, evidence of other acts by Barcus.  Specifically, Defendants move to preclude evidence of citizens' complaints made against Barcus relative to specific incidents of his conduct, and evidence of an altercation in which Barcus was involved at Scotty's Bar in Kalispell, Montana, in August 2010.

### a. Citizens' Complaints

Hardesty argues only that evidence of other citizens' complaints about Barcus is relevant to his claims that Tooley and the Highway Patrol failed to properly supervise Barcus.  Based on the Court's recommendation that those claims be dismissed, the evidence is no longer relevant to any factual issue remaining in this matter.  Consequently, Defendants' motion is denied as moot.

**b.  Scotty's Bar**

Barcus was involved in an altercation at Scotty's Bar on the night of August

26, 2010, and the early morning hours of August 27, 2010.  The Highway Patrol

investigated the incident and disciplined Barcus for his conduct.

Defendants argue the evidence regarding the situation at Scotty's Bar is

inadmissible.  They contend it is irrelevant to the matters in this case under Fed. R.

Evid. 402, and is inadmissible under Fed. R. Evid. 404(b) as improper evidence of

Barcus's other acts.  Defendants also argue the evidence is inadmissible because

any probative value it may have is outweighed by its unfair prejudice, and it would

confuse the issues at trial, mislead the jury, and constitute a waste of time under

Fed. R. Evid. 403.

Hardesty argues the evidence of Barcus's alleged aggressive and assaultive

behavior at Scotty's Bar is admissible and relevant to his claims for assault and for

malicious acts or omissions under Montana law.  Hardesty offers two alternative

arguments.  First he asserts the evidence is admissible under Fed. R. Evid.

404(b)(2) because it demonstrates the intentional nature of Barcus's conduct

during the course of his encounter with Hardesty.  Second, he argues the evidence

is admissible for impeachment purposes to rebut Barcus's contention that he was

in fear for his life during his altercation with Hardesty, and to show instead that he

does not hesitate to engage in physical fights.[1]

As to Hardesty's first argument, evidence of an unrelated incident may be admissible as relevant to show a defendant's intent with respect to the conduct at issue, but only if the requirements under Rule 404(b) are satisfied. *Walters v. Maass*, 45 F.3d 1355, 1357-58 (9th Cir. 1995). Here, the admissibility of the Scotty's Bar incident hinges, in the first instance, on whether or not Barcus's intent in striking Hardesty is actually at issue. If Barcus were to deny that he intentionally struck Hardesty — which does not appear to be the case — then his intent would be at issue thereby rendering the Scotty's bar incident potentially relevant. *See e.g. United States v. Ortiz*, 857 F.2d 900, 902-04 (2nd Cir. 1988) cert. denied 489 U.S. 1070 (1989).

Hardesty's second argument falls flat under Rule 404(a) and (b)(1) because evidence of the Scotty's Bar incident — if elicited by Hardesty in the first instance — would be offered for no other purpose than to prove that in his encounter with Hardesty, Barcus acted in accordance with the purported character trait of physical aggressiveness. This is not to say that during the course of trial Barcus may open

---

[1]Hardesty also argues the evidence of the incident at Scotty's Bar supports his claim that Tooley is liable for hiring Barcus. Again, since the Court recommends that the claims against Tooley be dismissed, the evidence is no longer relevant for the purpose asserted by Hardesty. Therefore, this aspect of the Defendants' motion is denied as moot.

the door to the admissibility of evidence of the incident — but whether he does remains to be seen.

### 4. Other Alleged Bad Acts Committed by the Highway Patrol and its Troopers

Defendants move in limine to exclude, as irrelevant and prejudicial, evidence of other incidents in which Highway Patrol Troopers allegedly used excessive force against other citizens. But, Hardesty argues only that the evidence of these other incidents is necessary to establish Tooley's liability for failing to property supervise Barcus and other Highway Patrol Troopers. Therefore, since the evidence is now moot in view of the Court's recommendation that Tooley be dismissed, Defendants' motion as to that evidence is denied as moot.

### 5. Evidence Contradicting Hardesty's Criminal Convictions

As a result of Hardesty's conduct in the underlying encounter with Barcus, Hardesty pled no contest to the criminal offenses of resisting arrest in violation of Mont. Code Ann. § 45-7-301, assault resulting in bodily injury in violation of Mont. Code Ann. § 45-5-201, and criminal possession of dangerous drugs in violation of Mont. Code Ann. § 45-9-102. Therefore, under authority of *Heck v. Humphrey*, 512 U.S. 477 (1994) which holds that a claim under 42 U.S.C. § 1983 is barred if the success of the claim would imply the invalidity of a criminal

conviction, Defendants argue that Hardesty is precluded from presenting any evidence, testimony or argument that contradicts any of his conduct that supports his criminal convictions, or implies that those convictions are invalid.

The holding in *Heck*, however, presents a rule barring the prosecution of a section 1983 claim, and it does not create a rule as to the admissibility of evidence, or "serve as an evidentiary bar." *Simpson v. Thomas*, 528 F.3d 685, 691, 695 (9th Cir. 2008). Therefore, if a plaintiff's section 1983 claim is not barred by *Heck*, then "relevant evidence may not be barred under the rule announced in *Heck*." 528 F.3d at 691. "*Heck* is not an evidentiary doctrine." *Id*. at 696.

The Court has already concluded Hardesty's claims in this case are not barred by *Heck*. Dkt. 41. Consequently, the holding in *Heck* does not serve as a rule governing the admissibility of any evidence Hardesty seeks to present. Defendants concede the existence of this limitation on the holding in *Heck* as found in *Simpson*. Therefore, Defendants' motion is denied in this respect.

Defendants, however, maintain that any evidence that Hardesty did not commit the offenses for which he was convicted should be excluded as speculative, unsupported and prejudicial under Fed. R. Evid. 403. Rulings as to the admissibility of any specific evidentiary matter relative to facts supporting Hardesty's convictions will be resolved by the presiding District Judge as they

17

arise at trial, and in the context of the evidence presented at trial.

### 6. Evidence Suggesting Barcus Planted Evidence to Incriminate Hardesty

Defendants move to preclude Hardesty from arguing that Barcus planted evidence of methamphetamine drugs in Hardesty's personal belongings to falsely incriminate Hardesty in the offense of the criminal possession of dangerous drugs. Specifically, Defendants refer to a segment of the video recording from Barcus's patrol car camera which shows Barcus throwing an object into the back of Hardesty's car.

Hardesty concedes he will not seek to establish that Barcus planted evidence on him. Therefore, Defendants' motion is granted in this respect. Hardesty is precluded from arguing, or using evidence to suggest that, Barcus planted incriminating evidence on Hardesty.

Nonetheless, Hardesty argues that he may still use the patrol car video evidence to challenge the professionalism of Barcus's conduct in throwing an object in the back of Hardesty's car. The relevance and admissibility of Barcus's conduct reflected in the video for the purpose of resolving any fact or issue at trial will be addressed by the presiding District Judge in the context of the trial in this matter.

### 7. **Code of Silence**

Defendants move to preclude Hardesty from presenting argument or evidence generally referring to "a 'code of silence,' 'blue shield,' 'group think,' or a culture of wrongdoing and cover-ups within the [Highway Patrol], or in conspiracy with other law enforcement agencies." Dkt. 76 at 27. Defendants contend there exists no evidence in this case of any such alleged circumstances.

Hardesty concurs that arguments and evidence of the code of silence, per se, is inadmissible. Therefore, Defendants' motion is granted as to the code-of-silence matters identified in their motion.

Notwithstanding, Hardesty argues he should be permitted to challenge any particular law enforcement witness's credibility by eliciting testimony concerning the witness's unwillingness to testify about a fellow law enforcement officer's conduct. The relevance and propriety of the line of questioning suggested by Hardesty will be addressed by the presiding District Judge in the context of the trial.

### 8. **Evidence of Insurance or Indemnification**

Hardesty does not object to Defendants' motion to exclude evidence as to the existence of any insurance against, or indemnification for, Barcus's asserted liability in this case. The evidence is barred by Fed. R. Evid. 411. Defendants'

motion is granted in this respect.

**B.      Hardesty's Motion in Limine**

**1.      Hardesty's Crimes, Wrongs or Other Acts**

Hardesty moves to exclude evidence of his prior, unrelated criminal

convictions, and alleged incidents of his physically assaultive behavior.  In

response, Barcus argues the incidents to which Hardesty refers are admissible

under Fed. R. Evid. 404(b)(2) for the purpose of proving Hardesty's bias, motive,

or knowledge.[2]  Barcus, however, has failed to establish any of the prior incidents

are admissible for the asserted purposes.

The Federal Rules of Evidence prohibit the admission of evidence of a

party's other acts, except for limited purposes.

> Evidence of a crime, wrong, or other act is not admissible to prove a
> person's character in order to show that on a particular occasion the person
> acted in accordance with the character.

Fed. R. Evid. 404(b)(1).  The Federal Rules, however, permit the use of evidence

of other acts for limited purposes such as for "proving motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

Fed. R. Evid. 404(b)(2).

---

[2]Barcus concedes he is not relying upon Fed. R. Evid. 609 for the admission
of evidence of Hardesty's prior convictions.

The Ninth Circuit consistently follows a four-part test to determine whether certain evidence is admissible under Rule 404(b)(2):

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) [...] the act is similar to the offense charged.

*United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012). The proponent of the evidence of other acts bears the burden of demonstrating the evidence is admissible under the four-part test. *Bailey*, 696 F.3d at 799; *Ellis v. Navarro*, 2012 WL 3580284, *3 (N.D. Cal. 2012). Finally, if the circumstances surrounding the evidence satisfy the four-part test, then the court must proceed to determine whether its probative value is substantially outweighed by the prejudicial impact of the evidence under Fed. R. Evid. 403. *Bailey*, 696 F.3d at 799.

Barcus's argument in support of the admissibility of Hardesty's criminal convictions and the specific incidents of Hardesty's alleged assaultive behavior is conclusory. He does not describe the details of any of the prior incidents or convictions and, therefore, he has not satisfied his burden of demonstrating that the evidence is admissible under the four-part test of the analysis under Rule 404(b)(2).

Alternatively, Defendants argue evidence of the prior incidents and

convictions may become relevant and admissible if, at trial, Hardesty suggests to the jury that he has always been a peaceful and law-abiding citizen. The admissibility of the evidence for that purposes will be reserved for resolution by the presiding District Judge in the context of the evidence presented at trial.

### 2. Hardesty's Use and Possession of Drugs on April 22, 2009

Hardesty moves to exclude evidence of his use and possession of drugs on April 22, 2009, the date of the underlying arrest. Specifically, Hardesty moves to exclude evidence of (1) a urine drug test reflecting the presence of methamphetamine and ecstasy[3] — a urine test that was performed at the Kalispell Regional Medical Center emergency room after Hardesty was arrested, and (2) a contact lens case that contained methamphetamine that was found in Hardesty's personal belongings during an inventory search at the jail.

### a. Strength of the Evidence of Methamphetamine and Ecstacy Drugs

Hardesty first suggests, without any scientific support, that the urine test conducted in the emergency room is "not entirely reliable" simply because it "was

---

[3]With respect to evidence of the presence of ecstasy in Hardesty, he cites only to the results of the emergency room urine test. Dkt. 85-2 at 6 of 7. Barcus, however, only emphasizes the evidence reflecting the presence of methamphetamine. Nonetheless, to the extent Hardesty's motion is directed at excluding evidence of both ecstasy and methamphetamine, the ruling on the motion is inclusive of the evidence of both drugs.

a preliminary, qualitative test conducted in a hospital lab[.]" Dkt. 84 at 13.

Hardesty's conclusory argument and mere assertion in this regard is insufficient to

establish that the test results are, in fact, unreliable.

Hardesty next argues that the evidence of the contact lens case is weak

because Defendants cannot properly establish the chain of custody for that

evidence. Hardesty argues there is no witness who can testify as to who found the

lens case on Hardesty, or how the lens case got in with a bag of Hardesty's

possessions at the jail.

Hardesty's suggestion that there are missing links in the chain of custody of

the lens case does not warrant exclusion of the evidence. Any alleged defects in

the chain of custody, or in the explanation of how the lens case was found in

Hardesty's possessions, go to the weight of the evidence, not its admissibility.

*United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995).

### b. Relevance of Drug Use Evidence — Barcus's Lack of Knowledge of Hardesty's Drug Use

Hardesty argues that evidence of the positive methamphetamine urine test

and the contact lens case is inadmissible because it is irrelevant under the

circumstances of this case. Hardesty argues the evidence is irrelevant because at

the time of Barcus's encounter with Hardesty, Barcus did not know that Hardesty

would later test positive for drug use, or that the lens case would later be found in Hardesty's possessions. Therefore, Hardesty asserts the evidence is irrelevant to his excessive force claim because a law enforcement officer's conduct in using force is evaluated under a standard of objective reasonableness under the circumstances present at the time of the arrest. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Hardesty's argument, however, is insufficient to warrant exclusion of the evidence.

A claim of excessive force requires an evaluation of the totality of the circumstances surrounding the use of force, including the suspect's "mental and emotional state[.]" *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). In this regard, evidence of a subsequent drug test demonstrating that a suspect was under the influence of drugs may prove relevant in assessing the totality of the circumstances depending on the totality of the evidence pertaining to Hardesty's conduct at the time of the underlying incident. *Id*. Therefore, Hardesty's motion is denied at this juncture subject to his right to renew the motion in the context of trial.

### c.  Barcus and Mark Muir's Testimony of Hardesty's "Superhuman Strength"

Hardesty moves to exclude testimony from both Barcus and his expert witness, Mark Muir, describing Hardesty as having "superhuman strength" during the course of Barcus's encounter with Hardesty. On April 25, 2009, Barcus prepared his Report of Arrest regarding the encounter on April 22, 2009. In his report Barcus described Hardesty's behavior and stated that, based on his "training and experience", he believed Hardesty:

> exhibited numerous indicators of someone who is under the influence of illicit drugs [...] including:
>
> [...]
>
> • his unbelievably rigid body and superhuman strength including dragging the weight of 3 men several inches at a time with 1 arm[.]

Dkt. 86-1 at 3-4 of 4.

Similarly, Mark Muir prepared his expert opinion report in which he recited facts of the encounter between Barcus and Hardesty reported to Mr. Muir and "as they are understood by" Mr. Muir. Dkt. 86-2 at 10 of 12. In that description of the incident, Mr. Muir described Hardesty as having "displayed amazing strength in resisting" Barcus. Dkt. 86-2 at 11 of 12.

Hardesty specifically moves to preclude Barcus and Mark Muir from

presenting testimony that Hardesty's alleged superhuman or amazing strength was due to his use of methamphetamine drugs.  He objects to those statements on the ground that neither Barcus nor Mr. Muir are qualified as experts capable of expressing an opinion as to any causal connection between methamphetamine use and a person's increased strength.

Barcus makes the bare assertion that he and Mr. Muir are properly qualified "given their specific training and experience in dealing with individuals under the influence of illegal drugs, including methamphetamines."  Dkt. 93 at 16 of 29. Barcus does not, however, identify any details of their training and experience that would qualify them as experts on the subject of whether methamphetamine use can cause a person to have increased strength.  Therefore, Barcus has not met his burden of establishing, by a preponderance of the evidence, that he and Mr. Muir are qualified as experts to provide that specific expert opinion testimony.  *See Todd v. Baker*, 2012 WL 1999629, *1 (D. Mont. 2012).  Hardesty's motion is granted in this respect.

### 3.    Testimony Regarding Effects of Methamphetamine on Human Behavior in General

Hardesty moves to exclude testimony from any witness describing the possible effects of the use of methamphetamine on human behavior.  In general, he

argues that to the extent any witness seeks to identify other possible effects of the drug that Hardesty did not exhibit on April 22, 2009, that testimony is irrelevant to the facts of this case and inadmissible. He argues Barcus cannot attempt to attribute certain effects of methamphetamine use to Hardesty if Hardesty himself did not exhibit those behaviors.

### a. Dr. Burry's Testimony Regarding Effects of Methamphetamine on Other Patients

After Hardesty was arrested he was taken to the Kalispell Regional Medical Center and treated by Dr. Scott Burry in the emergency room. In his deposition, Dr. Burry described a variety of behaviors that people might display as a result of being under the influence of ecstasy or methamphetamine. Specifically, Dr. Burry testified that people who are under the influence of those drugs are wild, cranked up, wide-eyed, crazy, fighting and screaming. Dkt. 86-3 at 9 of 45. Additionally, Dr. Burry confirmed that it is very common for people who are on those drugs to be strong, as if they have superhuman strength, due to "a huge adrenergic surge" in a person's body. Dkt. 86-3 at 43-44 of 45. Dr. Burry testified he has observed these characteristics in other patients that he has seen in the emergency room.

Hardesty argues that the foregoing characteristics and behaviors that Dr. Burry described in his deposition are irrelevant and inadmissible since Dr. Burry

did not observe Hardesty behaving in those ways.  Therefore, Hardesty moves for an order limiting Dr. Burry's testimony to a description of only those methamphetamine-caused behaviors he personally observed in Hardesty. Hardesty does not challenge Dr. Burry's qualifications as an expert relative to any behaviors that he personally observed Hardesty exhibiting.

The parties do not identify the capacity in which Barcus proposes to have Dr. Burry testify — they do not specify whether Dr. Burry will testify in his capacity as a treating physician, or whether Barcus has properly disclosed Dr. Burry as an expert witness as required under Fed. R. Civ. P. 26(a)(2)(A) and (B).

Absent that clarification from the parties, Dr. Burry can only testify in his capacity as a treating physician.  A treating physician is exempt from the mandatory expert witness disclosure requirements of Rule 26(a)(2)(B), "unless the testimony offered by the treating physician goes beyond care, treatment, and prognosis[.]" *St. Vincent v. Werner Enterprises, Inc.*, 267 F.R.D. 344, 345 (D. Mont. 2010).  Thus, a treating physician's permissible testimony is limited to matters of personal knowledge he or she acquired "through his or her 'treatment' of the patient." *Id*. 267 F.R.D. at 346.

The October 5, 2011 scheduling order issued in this case confirms this limitations on a treating physician's testimony in the absence of a proper

disclosure and expert report required by Rule 26(a)(2)(B). Dkt. 11 at 5.

Here, Dr. Burry's proposed testimony describes behaviors and characteristics caused by the use of ecstasy and methamphetamine that he has observed in other patients. Clearly, that testimony is based on knowledge Dr. Burry acquired outside of the course of his treatment of Hardesty at the emergency room on April 22, 2009. Therefore, the testimony is beyond the scope of his care, treatment, and prognosis provided to Hardesty, and must be excluded at trial absent a proper Rule 26(a)(2)(B) expert disclosure and report. Hardesty's motion is granted in this respect.

**b. Testimony From Other Witnesses Regarding "Superhuman Strength"**

Hardesty moves to preclude all experts identified in this case from testifying that methamphetamine can cause a person to have "superhuman strength." Specifically, Hardesty asserts Barcus cannot elicit testimony from Hardesty's experts (Will Cordes, Dr. Beck, and Dr. Rosen), and Barcus's expert (Mark Muir) regarding alleged superhuman strength caused by methamphetamine. Hardesty argues these witnesses are not qualified to render an expert opinion on the matter, but he does not rely on any details as to these experts' qualifications. Instead, he simply asserts that only pharmacologists or toxicologists are sufficiently qualified

to testify as to the effects of methamphetamine on human behavior, and none of the referenced experts are pharmacologists or toxicologists.

Of the four experts referenced in Hardesty's motion, Barcus addresses only Mr. Muir's qualifications. But Barcus does not identify any evidence of Mr. Muir's actual qualifications. Instead, Barcus merely asserts, through counsel's statements in the response brief, that Mr. Muir is "qualified to offer the testimony, given [his] specific training and experience in dealing with individuals under the influence of illegal drugs, including methamphetamine." Dkt. 93 at 16 of 29. Counsel's statements in a brief, however, are not sufficient to satisfy Barcus's burden of establishing that Mr. Muir is, in fact, qualified as an expert on the topic of whether methamphetamine can cause a person to have "superhuman strength." *See Todd v. Baker*, 2012 WL 1999629, *1 (D. Mont. 2012) (concluding that the burden of establishing the admissibility of an expert witness's opinion is upon the proponent of the testimony), and *Groves v. Croft*, 2011 WL 5509028, *5 (D. Mont. 2011) (same). Therefore, Hardesty's motion with respect to Mr. Muir is granted, subject to Barcus's opportunity to satisfy the trial court that Mr. Muir is, in fact, qualified as an expert in that specific area of expertise.

Barcus does not attempt to establish that Will Cordes, Dr. Beck, or Dr. Rosen are qualified as experts on the topic of superhuman strength caused by the

use of methamphetamine.  Consequently, Hardesty's motion is granted in this respect.

### 4.  Hardesty's Long-Term Brain Damage Caused by Methamphetamine Use

Hardesty moves to preclude Barcus from suggesting that Hardesty's use of methamphetamine on April 22, 2009, could have caused his alleged long-term brain damages.  Hardesty argues there is no other evidence of his use of methamphetamine drugs on any other occasion and, therefore, he suggests the evidence of his alleged one-time use of the drug is insufficient to constitute a cause of his brain damages.

Hardesty's motion lacks merit.  He has presented no medical evidentiary basis for his suggestion that his alleged single use of methamphetamine on one occasion could not have caused his brain injuries.  To the contrary, to the extent Barcus can establish through expert medical testimony that Hardesty's alleged brain damage is caused by his use of methamphetamine, even one time, he is permitted to present that evidence to the jury.  Hardesty's motion is denied in this respect.

### 5.  Dr. Reed's Statements Regarding Malingering and Hardesty's Other Negative Characteristics

Hardesty moves to exclude certain testimony from Dr. Mary Beth Reed, a

licensed clinical psychologist that Hardesty initially disclosed as one of his expert witnesses. Hardesty, however, later determined he would not use Dr. Reed at trial.

Hardesty requests the Court preclude Barcus from eliciting testimony from Dr. Reed regarding Hardesty's various characteristics. Specifically, he seeks to exclude information in Dr. Reed's medical records regarding (1) his alleged traits of a serial killer, (2) his alleged felony convictions prior to age 12, (3) his description of himself as "a little bastard," (4) his opinion that others have conspired against him, and (5) his failure to take responsibility for himself. Hardesty contends these matters constitute inadmissible evidence of his character or character traits barred by Fed. R. Evid. 404(a)(1).

Barcus does not advocate for the admission of any of the specific matters identified in the preceding paragraph. Therefore, Hardesty's motion is granted as to those matters under Rule 404(a)(1).

Hardesty next argues that Barcus should not be permitted to present testimony from Dr. Reed suggesting that Hardesty should receive further testing for malingering. Dr. Reed did not reach a definitive conclusion that Hardesty was malingering, but she suspected he was which is why she recommended Hardesty undergo further testing for malingering. Hardesty contends Dr. Reed's recommended referral for malingering is inadmissible because it constitutes

impermissible evidence of his character that is barred under Fed. R. Evid.

404(a)(1). He also argues Dr. Reed's recommendation is inadmissible expert

testimony precluded under Fed. R. Evid. 702 and *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Barcus retorts that Dr. Reed's testimony is admissible as expert opinion

testimony under Fed. R. Evid. 702. The Court disagrees.

The specific testimony of Dr. Reed in dispute is her statement that she was

suspicious or concerned that Hardesty may be malingering. Dkt. 93-2 at 9-11 of

23. But the statement was not made to a reasonable degree of medical certainty or

probability. Thus her statement is speculative in nature. Rule 702 does not permit

the admission of expert opinion testimony that is nothing more than "subjective

belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*, 509 U.S. 579, 590 (1993). Therefore, Dr. Reed's recommendation that

Hardesty be referred for further testing for malingering is inadmissible, and

Hardesty's motion is granted in this respect.

### 6.     <u>Dr. Burry's Opinion Regarding Mild Traumatic Brain Injury</u>

Dr. Burry testified in his deposition that he evaluated Hardesty for signs and

symptoms of a traumatic brain injury. He confirmed that upon review of

Hardesty's CT scan and lab studies, his exam of Hardesty's mental status, and his observation of Hardesty, he did not "find any objective medical findings that Mr. Hardesty suffered a traumatic brain injury" on April 22, 2009. Dkt. 93-1 at 9 of 21.

Hardesty moves to preclude Dr. Scott Burry from testifying as to his opinion that Hardesty did not suffer a mild traumatic brain injury. Hardesty challenges the admissibility of that opinion on three fronts. First, he contends Dr. Burry has limited knowledge about, and lacks expertise in, the medical fields related to brain injuries. Second, Hardesty asserts Dr. Burry reached his conclusion based only on his insufficient, limited knowledge of Hardesty's medical history acquired solely from his course of treatment provided to Hardesty in the emergency room on April 22, 2009. Finally, Hardesty argues Dr. Burry's conclusion is scientifically unreliable under *Daubert*. Specifically, Hardesty identifies evidence which he believes demonstrate that he did suffer a brain injury and, therefore, Dr. Burry's opinion is "medically wrong" and contrary to the evidence. Dkt. 84 at 36-37.

Treating physicians are permitted to testify as to opinions formed during the course of their treatment and diagnosis of a patient. *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (concluding a treating physician is exempt from the Rule 26(a)(2)(B) written report requirement to the

extent the treating physician's opinions were formed during the course of treatment). A treating physician may testify to opinions "based on personal knowledge, history, treatment of the patient, and facts of his or her examination and diagnosis[.]" *St. Vincent v. Werner Enterprises, Inc.*, 267 F.R.D. 344, 345 (D. Mont. 2010). Hardesty's challenges to the merits of Dr. Burry's opinion speak only to the weight of his opinion, not its admissibility. And Hardesty may test the strength of Dr. Burry's opinion through cross examination. Therefore, Hardesty's motion is denied in this respect.

## III. CONCLUSION

For the reasons stated, the parties' motions are granted in part, and denied in part. IT IS SO ORDERED.

DATED this 26th day of November, 2012.

Jeremiah C. Lynch
United States Magistrate Judge